United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DERRICK SIMS,

        Plaintiff,

v.

MICHAEL SAYRE, et al.,

        Defendants.

_____/

No. C 08-01691 SBA (pr)

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; ADDRESSING PENDING MOTIONS; AND DISMISSING AMENDED ADA, SECTION 504 AND SUPERVISORY LIABILITY CLAIMS**

(Docket nos. 14, 33, 53)

**PROCEDURAL BACKGROUND**

     Plaintiff, a state prisoner incarcerated at Pelican Bay State Prison (PBSP), filed a <u>pro se</u> civil rights complaint under 42 U.S.C. § 1983, seeking monetary damages as well as injunctive relief. Plaintiff, who claims to suffer from severe asthma, alleged in his original complaint that Defendants were deliberately indifferent to his serious medical needs.  Plaintiff named the following Defendants in his original complaint: PBSP Chief Medical Officer (CMO) Dr. Michael Sayre; PBSP Staff Service Analyst C. Gorospe; PBSP Family Nurse Practitioner/Health Care Manager Maureen McLean; PBSP Correctional Counselors Joseph Kravitz and B. Samples; PBSP Physician Linda Rowe; and the California Department of Corrections and Rehabilitation (CDCR) Chief of the Inmate Appeals Branch N. Grannis.

     Plaintiff then filed a motion for leave to file an amended complaint as well as a motion for leave to file a second amended complaint (SAC).  Thereafter, the Court granted both motions.  In his amended complaint, he stated, "[s]ince the filing of the original complaint, Plaintiff on numerous occasions has had his Eighth Amendment Rights violated by several new parties." (Am. Compl. at 1.)  He named the following "new" Defendants: PBSP Correctional Officers Seneta and R. Denead as well as PBSP Registered Nurse Schutz.  In his SAC, he added a "new" Defendant, CDCR Director Matthew Cate.  (SAC at 1.)

     On February 25, 2010, Plaintiff filed a motion for a preliminary injunction, requesting

temporary injunctive relief in the form of a medical transfer to the California Correctional Institution (CCI) in Tehachapi, California, in order to alleviate Plaintiff's asthma allegedly caused by "smoke inside the cell" and "to prevent possible death of an asthma attack."  (Mot. for Prelim. Inj. at 1.)

In an Order dated March 15, 2010, the Court reviewed Plaintiff's original complaint, as well as the amended complaint and SAC, and found that they stated a cognizable deliberate indifference claim against Defendants Sayre, Gorospe, McLean, Kravitz, Samples, Rowe, Grannis, Seneta, Denead and Schutz.  The Court served the deliberate indifference claim against the aforementioned Defendants.  The Clerk of the Court sent each of the aforementioned Defendants a Notice of Lawsuit and Request for Waiver of Service of Summons, and directed them that Rule 4 of the Federal Rules of Civil Procedure required them to cooperate in saving unnecessary costs of service of the summons and complaint.  The Court directed Plaintiff to amend his ADA and Section 504 claims[1] against Defendants PBSP and the CDCR, as well as his supervisory liability claim against Defendant Cate.  The Court gave Plaintiff until April 15, 2010 to file an amendment to the complaint.  He was warned the failure to do so would result in dismissal of his ADA, Section 504 and supervisory liability claims without prejudice.  The Court dismissed all other claims.

The Court also ordered Defendants to respond to Plaintiff's motion for a preliminary injunction at the same time that their answer was due.  (Mar. 15, 2010 Order at 9, 13.)  Defendants were specifically directed to inform the Court of any plans to transfer Plaintiff to another prison or to house him in any location other than the Security Housing Unit (SHU) or the infirmary at PBSP.  (Id.)  The Court added that Plaintiff could file a reply within thirty days of the date Defendants' response to the motion for a preliminary injunction was filed.  (Id.)

On April 5, 2010, Plaintiff filed a document entitled "Motion for Leave to File an Amended Complaint" (docket no. 30), in which he amends his ADA, Section 504 and supervisory liability claims.  Therefore, the Court will construe this document as his amendment to the complaint,

---

[1] Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.§ 12101 et seq., and Section 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a), prohibit discrimination on the basis of disability in the programs, services or activities of a public entity.

1   containing his amended ADA, Section 504 and supervisory liability claims.

2         On May 20, 2010, Plaintiff filed another document entitled "Motion for Leave to File an

3   Amended Complaint" (docket no. 33), in which he requests "leave to file an amended complaint

4   adding a party." (May 20, 2010 Mot. at 1.) Plaintiff also refers to his amended ADA, Section 504

5   and supervisory liability claims, which he claims he previously submitted to the Court. He claims

6   that "[s]ince filing the complaint [he] continues to have asthma attacks and has added new

7   information facts which . . . starts at paragraphs 63 through 70 of attached amended complaint."

8   (Id.) However, no such "amended complaint" is attached to his May 20, 2010 motion. Instead,

9   Plaintiff has attached several exhibits in support of his non-existent proposed "amended complaint."

10  (May 20, 2010 Mot., Exs. A-Z.)

11        On July 6, 2010, Defendants filed a "Notice of Waiver of Answer," noting that pursuant to 42

12  U.S.C. § 1997e(g)(1), the waiver "shall not to be construed as an admission of the putative truth of

13  Plaintiff's allegations or a waiver of affirmative defenses." (Defs.' Waiver at 1.)

14        On July 14, 2010, Defendants filed their opposition to Plaintiff's motion for a preliminary

15  injunction. On August 13, 2010, Plaintiff filed his reply to the opposition.

16

17        On August 25, 2010, Defendants filed a motion, entitled "Motion for Clarification Regarding

18  Dispositive Motion Filing Deadline, or, Alternatively, for Extension Thereof."

19        In an Order dated September 9, 2010, the Court noted that Defendants' dispositive motion

20  had not yet been filed. The Court thus granted Defendants' request for an extension of time to file

21  their dispositive motion and ordered that Defendants submit their dispositive motion on or by

22  October 4, 2010.

23        On September 27, 2010, Plaintiff filed an opposition to Defendants' request for an extension

24  of time, as well as a motion for reconsideration (docket no. 53) as to the Court's September 9, 2010

25  Order granting Defendants an extension of time to file their dispositive motion.

26        Having read and considered the papers submitted by the parties, the Court DENIES

27  Plaintiff's motion for a preliminary injunction (docket no. 14); DENIES his "Motion for Leave to

28  File an Amended Complaint" (docket no. 33); and DENIES his motion for reconsideration as to the

1  Court's September 9, 2010 Order granting Defendants an extension of time to file their dispositive

2  motion (docket no. 53).  The Court also reviews Plaintiff's amended ADA, Section 504 and

3  supervisory liability claims below.

**DISCUSSION**

**I.     Motion for Preliminary Injunction**

7          Plaintiff specifically requests for temporary injunctive relief in the form of a medical transfer

8  to CCI, in order to alleviate his asthma condition.  (Mot. for Prelim. Inj. at 1.)  Although Plaintiff

9  swears under penalty of perjury that the information contained in his motion is true and correct, and

10  that the pleadings describe his circumstances with a fair amount of specificity, the Court previously

11  found that it did not appear from the pleadings that Plaintiff would suffer immediate injury before

12  Defendants could be given an opportunity to respond.  (March 15, 2010 Order at 9).  Therefore,

13  Defendants were directed to respond to Plaintiff's motion.  As mentioned above, Defendants have

14  filed an opposition, and Plaintiff has filed his reply to the opposition.

**A.     Background Relating to Plaintiff's Asthma**

17          Plaintiff has lived with asthma since he was a child.  (Compl. at 3(a)(1).)  He claims that he

18  is "suffering ireparable [sic] harm on a constant basis in the form of not being able to breathe at [the]

19  onset of [his] asthma attacks, even a mild exacerbation can be fatal, and increases the risk of pain

20  and possible death."  (Mot. for Prelim. Inj. at 4.)  Plaintiff alleges that the conditions at PBSP

21  exacerbate his asthma attacks.  (Reply at 9.)

22          Plaintiff claims that "during his confinement at [PBSP] SHU," his asthma attacks are caused

23  by irritants such as "smoke, sent [sic] and fumes" that enter through the ventilation systems through

24  the SHU yards.  (Compl. at 3 (a)(1).)  Plaintiff adds that the ventilation system is inadequate as it

25  consists of "dust, soot, and ash."  (Id.)  Plaintiff asserts that the SHU ventilation systems are unable

26  to circulate air and "when the burning occurs [they] trigger what could be serious respratory [sic]

27  problems where Plaintiff struggles to breathe . . . resulting in chest pains, shortness of breath, and

28  wheezing."  (Id. at 3(a)(2).)

*United States District Court*
For the Northern District of California

4

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff alleges that since filing his first amended complaint, he has suffered numerous asthma attacks with "some resulting in trips to the infirmry [sic] and overnight stays with treatments. On one occasion a near death experience."  (Mot. for Prelim. Inj. at 1.)  Since at least 2006, Plaintiff claims that he was exposed to cigarette smoke and "control burnings" on numerous occasions, causing him to experience "well over 25 asthma exacerbations and attacks."  (Mot. for Prelim. Inj., Ex. A-E.)

On May 20, 2007, after numerous medical visits due to asthma related problems, Plaintiff filed an appeal on a Reasonable Modification or Accommodation Request (CDC 1824), in which he requested a transfer to another CDCR facility to escape the controlled burning, which was allegedly causing his respiratory problems to be "serious" and possibly "life threatening."  (Compl., Ex. A at 1.)

On June 6, 2007, Defendant Sayre conducted a first level review of Plaintiff's appeal and determined that "Plaintiff's asthma [was] far from the stage to consider transfer."  (Compl., Ex. A at 5.)  On June 14, 2007, Defendant Sayre ordered Plaintiff to take a pulmonary function test (PFT). (Compl. at 3(a)(3).)  The results of the PFT stated that Plaintiff exhibited "fair effort" in breathing and indicated "severe obstruction."  (Compl., Ex. A at 15.)

On July 7, 2007, Defendant McLean acknowledged Plaintiff's results of "severe obstruction" in her second level review of the appeal.  (Id. at 12.)  However, Defendant McLean denied Plaintiff's appeal, noting that:

> Your primary care provider is following you on a regular basis and you were last seen on July 2, 2007.  You did not have any complaints related to your asthma. After further discussion and consideration of your medical condition, regardless of the results of the asthma challenge test you are scheduled to take in the future, PBSP's Health Care Services Department is able to provide the level of care you need for your asthma.  As such, a recommendation for a medical transfer will not be made.

(Id.)  During a follow-up chrono care visit with Defendant Rowe on August 28, 2007, Plaintiff's medication at the time required that he take two puffs of his Flovent each day.  (Compl., Ex. B7.) Defendant Rowe noted that Plaintiff was not using his Flovent twice a day but only once, because he

5

**United States District Court**
For the Northern District of California

"[did] not like taking steroids."  (Id.)

Plaintiff's appeal was denied at the Director's level of review on August 30, 2007.  Defendant Grannis found that Plaintiff was receiving "ongoing medical care at PBSP" for his asthma condition.  (Compl., Ex. A at 20.)  Defendant Grannis added that Plaintiff's "asthma concerns are consistently monitored."  (Id.)  Defendant Grannis noted that at the first level of review, Defendant Sayre as CMO "determined [Plaintiff's] medical needs [could] be met at PBSP."  (Id.)  Defendant Grannis further noted that "[i]f at some point PBSP can no longer treat [Plaintiff's] medical condition appropriately, and a transfer is indicated, then all appropriate transfer procedures [would] be completed."  (Id.)

On April 14, 2009, Plaintiff was seen by Dr. Fennell for a pulmonary consultation at an outside hospital.  (Mot. for Prelim. Inj., Ex. I.)  The medical treatment plan determined from the consultation stated that Plaintiff's asthma was "worsening with exposure to smoke and dust" and recommended "increasing his Flovent up to the 220 and have [Plaintiff] take two puffs twice a day and see if [that] reduces his episodes."  (Id.)  Dr. Fennell thought it would be important to have "a fairly smoke-free environment for this patient since it [did] seem to precipitate his attacks . . . based on [Plaintiff's] history as well as from notes from the prison."  (Id.)

On August 18, 2009, Plaintiff had a medical visit with Dr. Williams due to an asthma attack, allegedly triggered by cigarette smoke.  (Mot. for Prelim. Inj., Ex. A.)  Dr. Williams wrote in Plaintiff's chrono visit report that Plaintiff "was considered a mild intermittent" but based on his recent asthma related tests, was "now considered to be a moderate persistent."  (Id.)  The results of Plaintiff's visit with Dr. Williams showed that Plaintiff's "peak flow avaerage [sic] around 550, he blew 400 today."  (Id.)  Dr. Williams wrote a report, noting: "[Plaintiff] has had a pneumovax.  He had a pulmonary consult on April 14, 2009 and it was recommended that his Flovent be increased to 220 two puffs BID which was done."  (Id.)  In the comments section of the report, Dr. Williams added, Plaintiff "has a history of consistent with moderate persistent asthma and is on the appropriate treatment for that."  (Id.)

6

United States District Court

For the Northern District of California

1    Plaintiff submitted a medical diagnosis by a former PBSP Physician, Dr. Allen.  (Mot. for

2    Prelim. Inj., Ex. G.)  In a letter written to Mr. George M. Mavris, Attorney at Law, dated September

3    4, 2008, Dr. Allen states that the diagnosis was originally submitted to support Plaintiff's state

4    habeas petition.  (Id.)  In the letter, Dr. Allen determined that Plaintiff did in fact have "serious"

5    asthma.  (Id.)  Dr. Allen determined that smoke and other pollutants at PBSP aggravated Plaintiff's

6    asthma and that a relocation might "possibly mitigate the problem."  (Id.)  In a second letter dated

7    December 24, 2008, written again to Mr. Mavris regarding Plaintiff's asthmatic condition, Dr. Allen

8    wrote, "The plan of the CDCR to adequately theraperize [sic] Mr. Sims such that he has no real

9    measurable provokable [sic] asthmatic symptoms of concern, is probably a reasonable one."  (Id.)

10   **B.    Legal Standard**

11

12   The Prisoner Litigation Reform Act of 1995 (PLRA) restricts the power of the court to grant

13   prospective relief in any action involving prison conditions.  See 18 U.S.C. § 3626(a); Oluwa v.

14   Gomez, 133 F.3d 1237, 1239 (9th Cir. 1998).  Section 3626(a)(2) applies specifically to preliminary

15   injunctive relief.  See 18 U.S.C. § 3626(a)(2).  In civil actions with respect to prison conditions it

16   permits the court to enter a temporary restraining order (TRO) or preliminary injunction "to the

17   extent otherwise authorized by law" but also requires that such an order "must be narrowly drawn,

18   extend no further than necessary to correct the harm the court finds requires preliminary relief, and

19   be the least intrusive means necessary to correct that harm."  Id.  The decision of whether to grant or

20   deny a motion for preliminary injunction is a matter of the district court's discretion.  Am. Trucking

21   Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

22   The standard for assessing a motion for preliminary injunction is set forth in Winter v.

23

24   Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 376 (2008).  Under Winter, "plaintiffs

25   seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits;

26   (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of

27   equities tips in their favor; and (4) a preliminary injunction is in the public interest."  Sierra Forest

28   Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009).

United States District Court

For the Northern District of California

A motion for a preliminary injunction or a request for a TRO under Federal Rule of Civil Procedure 65 is an extraordinary remedy that is generally reserved for emergency situations in which a party may suffer immediate irreparable harm.  See Whirlpool Corp. v. Marshall, 445 U.S. 1, 20 n.33 (1980) (temporary restraining orders used for "emergency situations"); cf. Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1377 (9th Cir. 1985) (delay in seeking injunctive relief weighs against a finding of urgency).

**C.    Analysis**

Under the first prerequisite for a preliminary injunction, Plaintiff must show a strong likelihood of success on the merits.  Plaintiff claims that he has a great likelihood of succeeding on the merits because Defendants have been deliberately indifferent to his serious medical needs by failing to carry out physician's orders and relocating Plaintiff to a smoke-free environment.  (Mot. for Prelim. Inj. at 9.)  While Plaintiff has filed various medical records authored by his PBSP care providers, an outside physician and by a former PBSP physician, none of these records indicate that such a transfer is medically necessary.  Instead, these records show that a transfer is not medically necessary because the medical staff provided care for Plaintiff's asthma.  (Compl., Ex. A at 12.) Even Dr. Allen, who wrote a medical opinion about Plaintiff's "serious" asthma condition, conceded that it would be reasonable for PBSP to "adequately" treat and care for Plaintiff's asthma condition. (Mot. for Prelim. Inj., Ex. G.)  Here, evidence shows that Plaintiff is unable to demonstrate a strong likelihood of success on the merits at this point because the records show that his asthma is being treated at PBSP and a transfer to a different prison is not medically necessary.  Furthermore, Plaintiff has failed to establish a likelihood of success on the merits because prisoners enjoy no constitutional right to be incarcerated at a particular prison.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983).

Under the second prerequisite for a preliminary injunction, Plaintiff must demonstrate a possibility of irreparable injury should the injunction not be granted.  Plaintiff claims that the nature of his asthmatic condition could cause his death at any given time.  (Mot. for Prelim. Inj. at 8.) Despite Plaintiff's allegation that he has "severe" asthma, the record shows that his asthma is only

8

"mild" or "moderate." (Mot. for Prelim. Inj., Ex. A.)  That diagnosis alone may demonstrate that the denial of a transfer to a different prison poses no "substantial" or "serious" risk.  This is also readily apparent since Plaintiff's "mild" to "moderate" asthma is being treated by PBSP's medical staff.  (Compl., Ex. A at 12.)  In fact, the record indicates Plaintiff has been prescribed both Flovent and Albuterol inhaler medication.  (Compl., Ex. B7.)  Moreover, there is a possibility that Plaintiff's asthma could worsen if he were transferred to a prison with poorer air quality, which could further exacerbate his asthma attacks.  Thus, Plaintiff fails to show that he could suffer irreparable injury should the injunction not be granted.

Under the third and fourth prerequisites, Plaintiff must show that the equities weigh in his favor and that a transfer is in the public's interest.  Plaintiff claims that it would be in the public's interest to grant him relief because "it is always in the public interest for prison medical to obey the law." (Mot. for Prelim. Inj. at 9.)  Here, the equities do not weigh in Plaintiff's favor.  Plaintiff is incarcerated because he committed first degree murder.  (Compl., Ex. E.)  He is being held in the SHU because he is a validated gang member, a Mexican Mafia associate.  (Compl., Ex E.)  The State has a strong interest in such isolated housing because it minimizes the harm inmates like Plaintiff can cause by limiting prisoners' interaction and communication with one another and establishing restrictive settings.  Further, as mentioned above, as a prisoner, Plaintiff does not have the right to choose which prison he is incarcerated in.  See Olim, 461 U.S. at 245.  Moreover, prison transfers are funded by taxpayers.  Thus, granting Plaintiff's request for such a transfer -- that the record shows is not medically necessary -- would instead weigh against the public's interest because it would be paid for by taxpaying citizens.  Thus, Plaintiff fails to establish the third and fourth prerequisites for a preliminary injunction.

After careful consideration, the Court finds that the facts alleged by Plaintiff do not support issuing a preliminary injunction because he has not established all the four prerequisites outlined in Winter.  Furthermore, the PLRA mandates denial of Plaintiff's motion for a preliminary injunction

because he has failed to show that transferring him to CCI is the least intrusive means of remedying his purported asthma condition.  See 18 U.S.C. § 3626(a)(2).

Accordingly, Plaintiff's motion for a preliminary injunction is DENIED.[2]

## II.   Motion for Leave to File Amended Complaint

On May 20, 2010, Plaintiff filed another motion for leave to amend his complaint with attachments in support of his proposed "amended complaint" (docket no. 33).  However, no proposed "amended complaint" was attached to that motion.  Plaintiff seems to have filed an unnecessary motion for leave to file an amended complaint.

The Court has previously granted Plaintiff leave to amend his complaint twice before. Moreover, Plaintiff has not attached a proposed "amended complaint," and he has merely attached exhibits.  Therefore, Plaintiff has not named the Defendants he wishes to add or the claims he wishes to submit in his proposed "amended complaint."  Even if Plaintiff had done so, allowing Plaintiff leave to amend his complaint for a third time would prejudice those Defendants who have already been served.  Furthermore, the deadline for the served Defendants' dispositive motion is approaching, on October 4, 2010.

Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend as of right at any time prior to the filing of a responsive pleading and thereafter only with leave of court.  See Fed. R. Civ. P. 15(a).  Rule 15(a) is to be applied liberally in favor of amendments, however, and leave is to be freely given when justice so requires.  See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994).  Here, had Plaintiff actually attached his proposed "amended complaint," it still would have been ill-timed -- as the deadline of Defendants' dispositive motion is fast-approaching

---

[2] Because the Court has denied Plaintiff's motion for a preliminary injunction, it need not address Defendants' alternative arguments in their opposition: (1) that Plaintiff's motion should be denied because Plaintiff has not sued any defendant who has the authority to transfer him; or (2) that Plaintiff's status as a Plata v. Schwartzenegger class member "precludes him from pursuing his healthcare-related injunctive relief claim in [a] separate lawsuit."  (Opp'n at 1.)

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and discovery has already closed.  Furthermore, allowing Plaintiff leave to file a third amended complaint could significantly widen the scope of the complaint, and, as mentioned above, it could prejudice the served Defendants.

Accordingly, Plaintiff's "Motion for Leave to File an Amended Complaint" (docket no. 33) is DENIED.

**III.     Review of Amended ADA, Section 504 and Supervisory Liability Claims**

In his amendment to the complaint, Plaintiff has filed amended ADA and Section 504 claims, stating:

> Per ADA and section 504, Plaintiff adds Pelican Bay State Prison and California Dept. [of] Corrections and Rehabilitations as defendants into the original complaint as Plaintiff did file a CDCR 1824 ADA Reasonable Modification or Accommodation Request.  See Original Complaint, Exhibit A. Plaintiff does qualify under ADA as an asthmatic.  See Exhibit (A) hereto at specialized physical health care services (SPHCS) clearly supports discrimination.

(Am. to the Compl. at 1.)  Attached as "Exhibit (A)" to the amendment to the complaint are two type-written pages partly describing the "Specialized Physical Health Care Services;" however, nowhere is there any allegation relating to discrimination.  Again, Plaintiff seems to raise the same conclusory allegations that he made in his original complaint, including that Defendants discriminated against him because of his disability by "failing to make reasonable accommodations such as transfering [sic] Plaintiff to another prison due to environment . . . ."  (Compl. at 3-27.)  In his amendment to the complaint, even after being directed to do so, Plaintiff does not allege that he was treated differently than similarly-situated non-disabled inmates and he does not allege that he was excluded from participation in a prison program or service because of his disability.  Therefore, while he names the proper Defendants, he has failed to state a cognizable disability discrimination claim against PBSP and the CDCR.

Accordingly, Plaintiff's ADA and Section 504 claims against PBSP and the CDCR are DISMISSED without further leave to amend.

11

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court will now analyze Plaintiff's amended supervisory liability claim.  He alleges that Defendant Cate

> is and has been responsible for promulgating, supervising the promulgatio[n] of . . . supervising the implementation of monitoring compliance with, enforcing and/or supervising the enforcement of policies and procedures affecting the medical car[e] of all inmates within CDCR.  In this position, Defendant Matthew Cate is and has been responsible for assuring that all inmates receive proper medical care including proper diagnosis and treatment, at all times mentioned Defendant Cate was acting under color of his employment, and is sued herein [in] his official and individual capacities.

(Am. to the Compl. at 4.)  A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).   In this action, Plaintiff specifically claims that Defendants were deliberately indifferent to his serious medical needs because they failed to provide adequate medical treatment for his asthma or caused him to suffer asthma attacks.  Plaintiff thus claims that because Defendant Cate held the position of Director of the CDCR, he should be liable for the other Defendants' alleged deliberate indifference.  Plaintiff does not provide any facts to support his allegation that Defendant Cate knew of Plaintiff's asthma condition or that Plaintiff was not being provided adequate medical treatment or, more specifically, that he was denied transfer to another prison.  This is a respondeat superior claim, that is, Plaintiff seeks to hold Defendant Cate liable because he was Defendants' supervisor and thus responsible for their alleged constitutional violations.  This is, however, not a proper basis for § 1983 liability.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Therefore, nothing in the amendment to the complaint is sufficient to overcome the deficiency of his claim against Defendant Cate which gave rise to the dismissal with leave to amend.

Accordingly, the supervisory liability claim against Defendant Cate is DISMISSED without further leave to amend.

12

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.      Plaintiff's "Motion for Leave to File an Amended Complaint" (docket no. 33) is DENIED.

2.      Plaintiff's motion for a preliminary injunction (docket no. 14) is DENIED.

3.      Plaintiff's motion for reconsideration as to the Court's September 9, 2010 Order granting Defendants an extension of time to file their dispositive motion (docket no. 53) is DENIED because the Court has the discretion to grant Defendants such an extension.

4.      Plaintiff's ADA and Section 504 claims against PBSP and the CDCR, as well as his supervisory liability claim against Defendant Cate are DISMISSED without further leave to amend.

5.      This Order terminates Docket nos. 14, 33, and 53.

IT IS SO ORDERED.

DATED: September 30, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\CR.08\Sims1691.denyTRO&revAm2Compl.frm        13

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

DERRICK SIMS,

                                                    Case Number: CV08-01691 SBA

                    Plaintiff,

                                                    **CERTIFICATE OF SERVICE**

    v.

MICHAEL SAYRE et al,

                    Defendant.

_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 6, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Derrick D. Sims J-20913

Pelican Bay State Prison

5905 Lake Earl Drive

P.O. Box 7500

Crescent City,  CA 95531

Dated: October 6, 2010

                                                    Richard W. Wieking, Clerk

                                                    By: LISA R CLARK, Deputy Clerk

G:\PRO-SE\SBA\CR.08\Sims1691.denyTRO&revAm2Compl.frm          14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California